STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
**IROQUOIS MASTER FUND, LTD., individually**             :
**and as Agent for 13 Purchasers under a Securities**    :
**Purchase Agreement dated August 4, 2006,**             :
**IROQUOIS CAPITAL MANAGEMENT L.L.C.,**                  :
**individually and as Authorized Representative of**     :
**IROQUOIS MASTER FUND, LTD., BRISTOL**                  :
**INVESTMNET FUND, LTD., CASTLERIGG**                    :
**MASTER INVESTMENTS LTD., CRANSHIRE**                   :
**CAPITAL, LP, HUDSON BAY FUND LP,**                     :
**HUDSON BAY OVERSEAS FUND, LTD.,**                      :
**LONGVIEW FUND, L.P., OPTION**                          :
**OPPORTUNITIES COMPANY, OTAGO**                         :
**PARTNERS, LLC, PARAGON CAPITAL LP,**                   :
**PORTSIDE GROWTH AND OPPORTUNITY**                      :
**FUND, ROCKMORE INVESTMENT MASTER**                     :
**FUND, LTD., ROCKMORE CAPITAL LLC,**                    :
**individually and as Authorized Representative of**     :
**ROCKMORE INVESTMENT MASTER FUND,**                     :
**LTD., and SMITHFIELD FIDUCIARY LLC**                   :
                                                         :
    **Plaintiffs,**                   :
                                                         :   **09 CV 8912 (HB) (THK)**
    - against -                       :
                                                         :   **OPINION &**
**CEL-SCI CORP.,**                                       :   **ORDER**
                                                         :
    **Defendant.**                    :
------------------------------------------------------------------------x
**Hon. Harold Baer, Jr., District Judge:**

    Iroquois Master Fund, Ltd. ("Iroquois") and other investors (collectively, "Plaintiffs") bring this action to recover losses allegedly suffered in connection with their investment in Defendant CEL-SCI Corporation. Plaintiffs invoke this Court's diversity jurisdiction and assert claims for breach of contract, breach of fiduciary duty, conversion, negligence, and a mandatory injunction. Before the Court is Defendant's motion to dismiss the complaint in its entirety, and plaintiff Option Opportunities Company's motion for partial summary judgment. For the reasons that follow, the motion to dismiss is granted in part and denied in part. The motion for summary judgment is denied.

1

## FACTUAL BACKGROUND

Plaintiffs are investors who claim to hold securities issued by Defendant CEL-SCI that give them certain contractual rights with respect to CEL-SCI stock. CEL-SCI is a corporation organized under the laws of Colorado, with its principal offices in Virginia. CEL-SCI is engaged principally in the research and development of its flagship product, Multikine®, which is a form of cancer treatment designed to simulate the activities of a healthy patient's immune system and promote an anti-tumor immune response. It has been cleared for Phase III clinical trials in the United States, Canada, and parts of Europe and Asia. Its stock is traded on the NYSE Amex Equities, and it uses the funds it raises towards development of Multikine®.

In a transaction between the parties in August, 2006 (the "Original Transaction"), plaintiff Iroquois paid $2 million for a secured note (the "Note") and warrant (the "Warrant") for the purchase of shares of CEL-SCI. The terms of the deal were stated in the Note, the Warrant, and a securities purchase agreement ("SPA") dated August 4, 2006. In the same transaction CEL-SCI also entered into a security agreement ("SA" and, together with the Note, Warrant and SPA, the "Transaction Documents") with Iroquois individually, and on behalf of 13 other purchasers who purchased an additional $6.3 million in Secured Notes. Am. Compl. ¶ 3. These purchasers or their alleged successors-in-interest are the other named Plaintiffs.

The Transaction Documents contain certain anti-dilution and price protection provisions that can be triggered by future issuances of Defendant's securities at prices below those it negotiated in the Original Transaction. *See* Am. Compl. ¶¶ 1, 4. In brief, Plaintiffs contend that under section 10(d) of the Note they are entitled to an adjustment of the conversion price of their secured notes and, under section 9(d) of the Warrant, they are entitled to a similar adjustment of the price at which the Warrants could be exercised into shares. They additionally claim that section 9(e) of the Warrant requires Defendant to adjust the number of shares into which the Warrant could be exercised in proportion to the number of new shares issued in order to avoid dilution of the Plaintiffs' total stake. Am. Compl. ¶ 7. These provisions are not triggered by issuances of a limited category of exempt securities defined in section 1.1 of the SPA (the "Excluded Stock").

In March 2009, Defendant entered into a transaction with non-party Byron Biopharma LLC, pursuant to which Defendant sold 3,750,000 units of its securities to Byron at $.20 per unit,

for a total of $750,000 (the "Byron Transaction").  Defendant asserts that the primary purpose of the Byron Transaction was to grant Byron a license to market Multikine® in South Africa.

At the heart of this dispute is whether the securities issued as part of the Byron Transaction are Excluded Stock, or whether they triggered the anti-dilution and price protection provisions established in the Note and Warrant.  Having failed to come to terms on this key issue, Iroquois commenced this action on October 21, 2009, seeking, among other things, to exercise its rights under the Transaction Documents.  Additional investors were added as plaintiffs in the Amended Complaint filed May 14, 2010.

## DISCUSSION

### I. THE MOTION TO DISMISS
#### A. Legal Standard

A complaint will be dismissed if there is a "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss on this ground, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  Where the Court finds well-pleaded factual allegations, it should assume their veracity and determine whether they "plausibly give rise to an entitlement to relief."  *Id.* at 1950.  While the court must "draw inferences [] in  the light most favorable to the plaintiff," *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007), it need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations ... a presumption of truthfulness."  *In re NYSE Specialists Secs. Litig.,* 503 F.3d 89, 95 (2d Cir. 2007).

#### B. Martin Act Preemption

Plaintiffs' claims for negligence, breach of fiduciary duty, and conversion are preempted by the Martin Act, New York's "Blue Sky" law[1] designed to combat fraudulent and deceitful practices in the distribution, exchange, sale, and purchase of securities.  *See*  N.Y. Gen. Bus. Law § 352, et seq. (McKinney 1960) (the "Act").  The Act gives the New York Attorney General exclusive authority to enforce its provisions, and courts have interpreted this to preempt private

---

[1] A blue sky law is a state consumer protection law that regulates the offering and sale of securities to protect the public from fraud.  *See* Black's Law Dictionary (9th ed. 2009).  *C.f. Hall v. Geiger-Jones Co.*, 242 U.S. 539 (1917) ("The name that is given to the law indicates the evil at which it is aimed, that is, to use the language of a cited case, 'speculative schemes which have no more basis than so many feet of 'blue sky'").

3

common law claims falling within the Martin Act's purview, because to do otherwise "would effectively create an end-run around the New York Attorney General's exclusive enforcement authority." *Horvath v. Banco Comercial Portugues, S.A.*, No. 10 Civ. 4697 (GBD), 2011 WL 666410, at *7 (S.D.N.Y. Feb. 15, 2011). Although decisions on Martin Act preemption have not been wholly uniform, as Judge Sand recently wrote "the overwhelming majority of courts to consider the issue have found that such claims are preempted." *In re Beacon Assocs. Litig.*, No. 09 Civ. 777(LBS), --- F.Supp.2d ----, 2010 WL 3895582, at *35 (S.D.N.Y. Oct. 5, 2010). In its only case on the issue, the Second Circuit recognized Martin Act preemption, citing "principles of federalism and respect for state courts' interpretation of their own laws." *Castellano v. Young & Rubicam, Inc.,* 257 F.3d 171, 190 (2d Cir.2001) (dismissing breach of fiduciary duty claim as preempted by Martin Act).

Thus, until the New York legislature or the Court of Appeals says otherwise, it is settled that the Act "preempts common law securities claims sounding in fraud or deception that do not require pleading or proof of intent, and that are based on conduct that is 'within or from' New York." *In re Beacon*, 2010 WL 3895582, at *37 (dismissing claims for, among others, breach of fiduciary duty, gross negligence, and breach of contract); *Abbey v. 3F Therapeutics, Inc.*, No. 06 CV 409 (KMW), 2009 WL 4333819 (S.D.N.Y. Dec. 2, 2009); *Owens v. Gaffken & Barriger Fund, LLC,* No. 08 Civ. 8414(PKC), 2009 WL 3073338, at *13 (S.D.N.Y. Sept. 21, 2009) (dismissing unjust enrichment and conversion claims arising out of plaintiff's investments); *Spain v. Deutsche Bank*, No. 08 Civ. 10809 (LBS), 2009 WL 3073349, at *3 (S.D.N.Y. Sep. 18, 2009); *Kassover v. UBS AG*, 619 F. Supp. 2d 28 (S.D.N.Y. 2008) (dismissing claims for breach of fiduciary duty and negligence); *Pro Bono Invs, Inc. v. Gerry*, No. 03 Civ. 4347 (JGK), 2005 WL 2429787, at *16 (S.D.N.Y. Sep. 30, 2005) (dismissing counterclaims for breach of fiduciary duty, conversion, negligence, and others as "common law claims the subject matter of which is covered by the Martin Act...."). "A claim sounds in fraud when, although not an essential element of the claim, the plaintiff alleges fraud as an integral part of the conduct giving rise to the claim", such as when a claim relies on "alleged misrepresentations and omissions." *In re Beacon*, 2010 WL 3895582, at *37.

Plaintiffs admit that the "transactions, statements, practices, and conduct alleged" in this suit all occurred in New York. Am Compl. ¶ 22. This satisfies the requirement of a New York nexus. Additionally, each claim is predicated on allegedly deceptive acts and misrepresentations

4

that frustrated the Plaintiffs' purchase, or desire to purchase, securities. *See, e.g.*, Am. Compl. ¶¶ 15 ("Defendant misled Plaintiff . . . by the continued refusal to provide Plaintiff with information about the Byron Issuance"), 25 ("Despite Defendant's assertions that the primary purpose of the Byron Issuance was for the granting of a license in order to enter the market in South Africa . . . the dilutive nature of the Byron Issuance is not consistent with such a licensing transaction but rather bears a striking resemblance to a transaction whose primary purpose was to raise capital."), 39-40 (Defendant breached its duty to act "in an honorable and fair manner"), 45 ("Defendant's continued retention and withholding of securities . . . in reliance on incorrect statements Defendant made to Plaintiff . . ."). It is beyond cavil that the claims for breach of fiduciary duty, conversion and negligence do not require a pleading or proof of intent, and the Plaintiffs do not argue otherwise. They therefore fit squarely within the ambit of the Martin Act and must be dismissed. *See Spain v. Deutsche Bank*, 2009 WL 3073349, at *3 ("the Martin Act preempts breach of fiduciary duty claims pled in the context of an alleged securities fraud occurring in New York"); *Pro Bono Invs.,* 2005 WL 2429787, at *16 (dismissing counterclaims for breach of fiduciary duty, conversion, negligence, and others as "common law claims the subject matter of which is covered by the Martin Act....").

Because these claims are dismissed under Martin Act preemption, I need not fully address the further arguments for dismissing them. Nonetheless, it bears mentioning that Plaintiffs have failed to establish the duty or fiduciary relationship required to support their negligence and breach of fiduciary duty claims. They have "pointed to nothing to show that this relationship was anything beyond an ordinary arms-length business relationship under a contract." *Regal Int'l (BVI) Holdings Ltd. v. CDL Hotels USA, Inc.*, No. 02 Civ. 8581 (RO), 2003 WL 21511926, at *2 (S.D.N.Y. July 1, 2003); *see also* Am. Compl. ¶¶ 39, 42; Brecher Decl. Ex 2 (SPA ¶¶ 3.1(bb), 3.2(d)) (stating that the parties to the Original Transaction acted "solely in the capacity of an arm's length purchaser"); *Sotheby's, Inc. v. Minor*, No. 08 Civ. 7694 (BSJ), 2009 WL 3444887, at *9 (S.D.N.Y. Oct. 26, 2009) ("In arms length commercial transactions, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances" and a court need not credit "mere legal conclusions that are dressed up as factual allegations" that a defendant held fiduciary responsibilities) (internal citations omitted); *LaSalle Hotel Lessee, Inc. v. Marriott Hotel Servs., Inc.*, 29 A.D.3d 464 (1st Dept. 2006) (dismissing breach of fiduciary duty claim, where it was

5

based on the same allegations as the cause of action for breach of contract).  The conversion claim must be dismissed as duplicative because it arises out of Defendant's alleged breach of its contractual duties.  *See* Am. Compl. ¶ 45; *Strategic Growth Int'l, Inc. v. Remote MDX, Inc.*, No. 06 Civ. 3915 (RWS), 2008 WL 4179235, at *3 (S.D.N.Y. Sep. 10, 2008).

Unlike their tort claims, Plaintiffs' contract claim is not preempted.  For purposes of Martin Act preemption, "[a] breach of contract claim may sound in fraud where, when the promise is made, the defendant secretly intended not to perform or knew that he could not perform."  *In re Beacon*, 2010 WL 3895582, at *38 (internal quotations omitted).  Here, the contract claims are based on the SPA, and there are no allegations that Defendants entered into that agreement with any deceitful intent or knowledge.  See Pl. Opp. 10-11 ("Plaintiff is suing on existing contractual rights and does not predicate any of its claims in any way on wrongs performed in connection with the 2006 offer, sale or purchase of the Defendant's securities.").  Defendant asserts no other grounds to dismiss the contract claim, and it may proceed.

### C. Defendant's remaining contentions

Defendant also seeks dismissal of Plaintiffs' claim for a mandatory injunction requiring Plaintiff to hand over certain documents and information.  A mandatory injunction should only issue in "extraordinary circumstances," *St. Paul Fire and Marine Ins. v. York Claims Serv., Inc.*, 308 A.D.2d 347, 349 (1st Dept. 2003), and is generally unavailable where an adequate remedy is available at law.  *See Vaughn v. Consumer Home Mortgage, Inc.*, 293 F. Supp. 2d 206, 213 (E.D.N.Y. 2003).[2]  Plaintiffs have failed to show facts that demonstrate they will suffer the requisite "irreparable harm in the absence of the injunction," *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008); nor have they come close to meeting the heightened standard of demonstrating a "clear" or "substantial" likelihood of success on the merits applicable where, as here, the sought-for injunction will alter rather than maintain the status quo.  *Id.*  The mandatory injunction claim must be dismissed.

Defendant's standing arguments persuaded the Plaintiffs to voluntarily withdraw Iroquois Capital Management, L.L.C and Rockmore Capital LLC as plaintiffs.  Plaintiffs' request to amend the caption to reflect this voluntary withdrawal is granted.  Defendant's other standing arguments, to the extent they are not mooted by the Amended Complaint and the dismissal of

---

[2] While Plaintiffs fail to make a persuasive argument that an award of money damages would be inadequate, it appears that Defendant is contractually precluded from raising this defense here.  *See* Pl. Opp. at 8 (asserting that SPA § 7.15 entitles Plaintiff to seek specific enforcement and requires that Defendant waive the defense that a remedy at law would be adequate).

claims in this Opinion and Order, are unpersuasive. Any relief that Iroquois may seek "as Agent" on behalf of other purchasers is, by Iroquois' own admission, limited to certain claims delineated in the Transaction Documents, and Iroquois may not seek money damages as agent. *See* Pl. Supp. Opp. 4. Defendant's motion to dismiss certain claims or entities for lack of standing is therefore denied except to the limited extent described above.

## II.     THE MOTION FOR SUMMARY JUDGMENT

Plaintiff Option Opportunities Company ("OOC") moves for summary judgment on its claims for breach of contract, breach of fiduciary duty, conversion and negligence. The motion is moot to the extent it seeks summary judgment on OOC's claims for breach of fiduciary duty, conversion and negligence, because those claims have been dismissed for the reasons described above. The motion is denied as it relates to the contract claim for the reasons that follow.

OOC contends that the warrant that it holds – originally exercisable into 232,558 shares of Defendant's common stock at $.95 each – was ultimately reduced in July, 2009, to $.40, and the number of shares into which the Warrant was exercisable was increased in September, 2009, to 552,325. Pl.'s Br. 2-3. On September 22, 2009, OOC exercised its warrant at a higher price: $ .75 per share. In short, OOC contends that it paid $174,418.50 on September 22, 2009, and received fewer shares than it was entitled to under the Warrant's anti-dilution and price protection provisions. In accordance with those provisions, it alleges, it is entitled to an additional 203,488 shares and a new warrant valued at $155,812.52, for a total outstanding dollar amount of $509,883.83.

The motion fails for two independent reasons. First, The Amended Complaint is devoid of the factual allegations on which OOC premises its motion. Summary judgment is not appropriate on a claim not alleged in the complaint. *See, e.g. Coram Healthcare Corp. v. Cigna*, No. 00 Civ. 2677 (RMB), 2002 WL 32910044, at *11 (S.D.N.Y. July 24, 2002); *see also Mauro v. Southern New England Telecomm., Inc.*, 208 F.3d 384, 386 n.1 (2d Cir. 2000) ("Because [plaintiff] did not include a claim in his complaint, the district court refused to consider it. We will not disturb this decision on appeal."). While the Amended Complaint alleges a breach of contract, it does not allege the breach of contract that is the subject of OOC's summary judgment motion. The Amended Complaint alleges nothing about Nite, OOC's alleged predecessor in interest who purchased the warrant OOC now holds. Nor does it allege anything

7

about the September 2009 transaction that gives rise to the allegations on which OOC moves for summary judgment – indeed no facts are alleged to have occurred after August 2009. Outside of the caption, the Amended Complaint contains no reference to Nite, OOC, or OOC's exercise of its Warrant. OOC can point to no more than the breach of contract allegations premised on the Byron issuance; with respect to the separate breach that OOC seeks to remedy here, the Byron-related allegations provide no more than bald legal conclusions that fail to meet the minimum pleading requirement of setting forth "at the very least, . . . facts that will allow each party to tailor its discovery to prepare an appropriate defense." *Coram Healthcare Corp.*, 2002 WL 32910044, at *11.

OOC's motion also fails because it is premised on inadmissible evidence. "The principles governing admissibility of evidence do not change on a motion for summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 56 (2d Cir. 1997); *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must . . . set out facts that would be admissible in evidence"). With limited exceptions not applicable here, offers to compromise or settle a claim are inadmissible. Fed. R. Evid. 408; *Municipal Cap. Appreciation I, L.P. v. Page*, 181 F. Supp. 2d 379, 386 n.3 (S.D.N.Y. 2002) ("Statements made in compromise negotiations are inadmissible . . . and may not be considered by a trial court on a summary judgment motion."). OOC predicates its motion on an alleged admission by Defendant's counsel contained in a letter, dated June 17, 2010, and attached to the declaration of OOC's counsel. *See* Pl.'s Br. 2 n.2. The letter was clearly intended as part of a settlement negotiation between the parties – indeed it states above the reference line in large, bold-face and capitalized font, that it is "FOR SETTLEMENT PURPOSES ONLY AND NOT FOR PURPOSES OF LITIGATION." OOC's introduction of the letter into this litigation, and its attempts to work the letter into one of the limited exceptions to Rule 408, are improper and unpersuasive.

CEL-SCI has represented that it has attempted to resolve OOC's grievances over the September 22, 2009, exercise of its warrant, and will continue to do so. As discussed above, OOC's contentions are ancillary to the main issue in this lawsuit, were not plead in the complaint, and rely on inadmissible evidence.

## CONCLUSION

For the reasons described above, Defendant's motion to dismiss is GRANTED with respect to the claims for negligence, breach of fiduciary duty, conversion, and a mandatory

injunction, and otherwise DENIED. Plaintiff OOC's motion for summary judgment is DENIED in its entirety. The caption is herewith amended to reflect the withdrawal of Iroquois Capital Management, L.L.C and Rockmore Capital LLC as plaintiffs.

The Clerk of the Court is instructed to close the relevant motions (Docket Entries #22 and #58) and remove them from my docket.

SO ORDERED
March 24, 2011
New York, New York

Hon. Harold Baer, Jr.